Joe Frank SMITH, Appellant,

v.

Madelyn SMITH, Appellee.

No. 9464.

Court of Appeals of Texas,
Texarkana.

July 29, 1986.

Maida C. Modgling, Meyer, Meyer & Modgling, Hondo, for appellant.

John Britt, Britt & Combest, San Antonio, Robert Lynn McGowen, Devine, for appellee.

GRANT, Justice.

Joe Frank Smith appeals the property division in this divorce case.

Madelyn and Joe Frank Smith divorced after twenty-seven years of marriage. The couple's ranching operation comprised most of their community estate, and there were tracts of land owned in part by the separate estate of Mr. Smith and tracts leased from the estate of Mr. Smith's father. Mrs. Smith did not plead the right of reimbursement either to her separate estate or to the community estate. Mr. Smith filed a general denial and cross claim, raising issues of separate property ownership.

Trial was to the court. Neither party requested findings of fact and conclusions of law from the trial court, and none were filed.

Where findings of fact and conclusions of law are not properly requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In the Interest of W.E.R.*, 669 S.W.2d 716 (Tex.1984); *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1977). In the absence of findings of fact and conclusions of law, the judgment of the trial court implies all necessary fact findings in support of the judgment. *In the Interest of W.E.R.*, supra; *Buchanan v. Byrd*, 519 S.W.2d 841 (Tex.1975).

Mr. Smith complains that the trial court abused its discretion in dividing the community property and that the trial court's property division was against the great weight and preponderance of the evidence. When considering a "great weight" point, we consider all the evidence and remand if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). It is well settled that Texas courts are given wide discretion in making division of property of parties, and that this discretion will not be disturbed on appeal unless the court has clearly abused its discretion. *Brooks v. Brooks*, 612 S.W.2d 233 (Tex.Civ.App.— Waco 1981, no writ). The mere fact that the community estate is not equally divided does not constitute an abuse of discretion. *Zamora v. Zamora*, 611 S.W.2d 660 (Tex. Civ.App.—Corpus Christi 1980, no writ). The trial court is vested with broad discretion to divide the property of the parties in a manner which it deems just and right. *Goetz v. Goetz*, 567 S.W.2d 892 (Tex.Civ. App.—Dallas 1978, no writ).

The value of the Smiths' community assets is disputed. Mrs. Smith was awarded approximately $14,000 in community assets and a promissory note in the principal sum of $15,000 at nine percent interest, payable $6,000 yearly plus interest and secured by deed of trust and by an equitable lien imposed by the court against Mr. Smith's separate real property. Her award included a mobile home and a 1978 Chevrolet van. The record indicated that Mr. Smith received assets with a net value of $39,000 or negative $114,500, depending on which party's figures are used. His award included the farm equipment, tools, trailers and the livestock. (In arriving at the net figure, Mr. Smith treated the leasehold value in the 1,500 acres as a negative figure and also did not include any value for the improvements to his separate property.) Mr. Smith testified that he would be willing to

assume all the debts owed by the community so long as he was awarded the collateral for those debts. The bulk of these debts were attributed to the business which Mr. Smith received.

There are many factors which the court may consider in dividing the community estate. The trial court heard testimony concerning fault in breaking up the marriage and the size of the separate estate of the husband[1] which was enhanced with community funds. *Zamora v. Zamora, supra.* Also the court may consider the business experience of the parties. *Cooper v. Cooper,* 513 S.W.2d 229 (Tex.Civ.App.— Houston [1st Dist.] 1974, no writ). Mr. Smith had netted between $60,000 and $100,000 per year managing his own oil field business in 1978–79–80. Mrs. Smith had kept books for the company. The trial court also heard testimony concerning Mrs. Smith's earning capacity. *Frausto v. Frausto,* 611 S.W.2d 656 (Tex.Civ.App.— San Antonio 1980, writ dism'd). At the time of trial, Mrs. Smith, a high school graduate, had obtained employment at Long & Associates driving a test vehicle, for which she was paid $3.50 per hour.

■ It is the business indebtedness of approximately $122,000 which by Mr. Smith's figures causes his award to have a negative value. He was awarded the collateral on this indebtedness as well as the entire ranching operation. It is appropriate for the indebtedness to follow the assets by which it is secured, and it is unlikely that Mrs. Smith, with a salary of $3.50 per hour, could repay this debt or any significant portion thereof.

We have reviewed the division of community property by the trial court and find no abuse of discretion. The trial judge as

trier of the facts could determine which evaluation figures to accept, as well as looking to other appropriate factors. Neither do we find the property division against the great weight and preponderance of the evidence.

Mr. Smith further asserts that the trial court erred in awarding a disproportionate share of the property based upon intentional torts. Although there is some evidence of an intentional tort, there is nothing in the record to indicate that any damages were awarded on this basis or that it was a factor considered by the trial court. Therefore, we overrule this point without further discussion.

■ Mr. Smith also complains that Mrs. Smith was awarded $15,000[2] in cash as reimbursement for expenditures by the community estate for improvements to Joe Frank Smith's separate real property.[3] Mr. Smith argues that because reimbursement was not specifically pled, the trial court could not properly consider reimbursement in dividing the property and that the evidence was insufficient to find that the community investment exceeded the benefit received by the community estate from the use of Mr. Smith's separate real property. Testimony was heard from both Joe Frank Smith and Madelyn Smith regarding enhancement of his separate property through funds expended during the marriage. Though these amounts were disputed, Mr. Smith did not object to the absence of reimbursement pleadings or to the evidence offered showing the improvements and enhancement to the value of Mr. Smith's separate property by the community estate. Thus the issue was tried by consent. *Pruske v. Pruske,* 601 S.W.2d 746 (Tex.Civ.App.—Austin 1980, writ dism'd). *See Jensen v. Jensen,* 665 S.W.2d

---

1. Mr. Smith owned an undivided one-half interest in 232.74 acres of land, and received the community's leasehold interest in 1,300 acres. Mrs. Smith had inherited a one-seventh interest in a house and $6,000.

2. Exercising its plenary powers, the court modified its original judgment by reducing a $21,000 award to $15,000 with annual payments and interest remaining the same.

3. The trial court did not indicate in any way that the $15,000 was being awarded as reimbursement for expenditures by the community estate for improvements to the separate property, but this is the only theory upon which an equitable lien could be allowed.

107 (Tex.1984), concurring opinion by Justice Robertson.

Moreover, the trial court's duty under Tex.Fam.Code Ann. § 3.63 (Vernon Supp. 1986) to divide the estate of the parties in a divorce action permits a more liberal construction of the pleadings pertaining to property division than in other civil cases. *Workings v. Workings,* 700 S.W.2d 251 (Tex.App.—Dallas 1985, no writ); *Buchan v. Buchan,* 592 S.W.2d 367 (Tex.Civ.App.—Tyler 1979, writ dism'd). Mrs. Smith's prayer for general relief in this divorce action entitles her to her proven rights insofar as the laws of this State entitled the court to award them. *Workings v. Workings, supra; Scott v. Fort Worth National Bank,* 125 S.W.2d 356 (Tex.Civ.App.—Fort Worth 1939, writ dism'd).

■ Mr. Smith's complaint of insufficient evidence supporting the reimbursement requires us to consider and weigh all of the evidence. *In re King's Estate, supra.* However, in the absence of findings of fact and conclusions of law, our review of the evidence requires affirmance if the judgment can be upheld on any theory finding support in the evidence. *In the Interest of W.E.R., supra.*

Both Mr. and Mrs. Smith testified regarding the enhancement of Mr. Smith's separate property by expenditures of community funds. The improvements included the building of a barn, an office building and a lighted roping arena. There was also testimony about the repairing and building of fences.[4] We find that there was sufficient evidence to support the right to reimbursement.

The only evidence concerning enhanced value involved a 22.74 acre tract of land.[5] Mr. Smith testified that the improvements had added a value of $200 per acre, which would be a $4,548 increase in value because of the improvements. Mrs. Smith testified that the land with the improvements would

be worth a little more than $100,000 and that without the improvements it would be worth between $2,500 and $4,000 per acre. Taking the minimum value per acre would place a value on the land of $56,850, which would mean that the improvements enhanced the value of the land $43,150. Taking the higher figure from her testimony as to the value before the improvements, the land without the improvements would be worth $90,960, showing the improvements enhanced the land by $9,020. We thus have a range in value of enhancement, based on Mrs. Smith's testimony, of $9,020 to $43,150. This testimony as to the value of the property without improvements and the value of the property with improvements is sufficient to sustain a finding as to the amount of the enhancement in value. *Girard v. Girard,* 521 S.W.2d 714 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). The case of *Anderson v. Gilliland,* 684 S.W.2d 673 (Tex.1985), establishes the enhancement formula as the proper measure for such improvements. If Mr. Smith only owned a one-half undivided interest in the improved property, it could be argued that he benefited by only one-half of the enhanced value. However, he would also benefit by having the other one-half under lease. The fact that the other one-half benefit belonged to his family was another factor to be considered.

We next turn to Mr. Smith's complaint that the trial court erred in ordering the $15,000 cash award to Mrs. Smith to be secured by an equitable lien on Mr. Smith's separate real property. Mr. Smith may not be divested of his separate real property upon divorce. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977). However, the trial court is vested with authority under the laws of this State to fix a lien on separate estates for the discharge of payments to the former spouse by the owner of the property. *Cook v. Cook,* 665 S.W.2d

---

4. Some of the fencing was apparently on land other than the 27–acre tract, which is the only realty about which testimony of enhancement value was given.

5. Mrs. Smith referred to the tract as a 27–acre tract. Mr. Smith referred to it in his testimony as being "approximately twenty something acres." The property description in the deed to Mr. Smith shows the tract to be 22.74 acres.

161 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.); *Buchan v. Buchan, supra; Bell v. Bell,* 540 S.W.2d 432 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ). The law classifies this remedy as one founded in equity, and the rights of Mr. and Mrs. Smith are to be determined by principles of equity, both as to the amount and the means of enforcing its payment. The application of these principles does not mean that a party is divested of title to real property. Although it may finally result in the loss of title if sold under execution, the ultimate divestiture by foreclosure is essentially voluntary, since the owner may prevent this by complying with the court's order to pay. *Buchan v. Buchan, supra.*[6]

Mr. Smith contends that the property ordered by the court to be used to secure the note paying the $15,000 to Mrs. Smith is his homestead. Tex. Const. art. XVI, § 50 states that no lien is valid on a homestead except for purchase money, taxes, or work and material used in constructing improvements.

The court in *Eggemeyer v. Eggemeyer,* 623 S.W.2d 462 (Tex.App.—Waco 1981, writ dism'd), discussed the application of the limitation by the Texas Constitution as to liens on a homestead. The court found that equitable liens on a homestead are proper to secure reimbursement for taxes and lien indebtedness. In these situations, the community is entitled to be subrogated to the rights of the respective lien holders. The court in *Eggemeyer* cited *Putty v. Putty,* 6 S.W.2d 136 (Tex.Civ.App.—Amarillo 1928, no writ), which involved the payment of taxes, and *Downing v. Jeffrey,* 173 S.W.2d 241 (Tex.Civ.App.—Galveston 1943, writ ref'd w.o.m.), and *Magruder v. Johnston,* 233 S.W. 665 (Tex.Civ.App.—Texarkana 1921, writ ref'd), which involved payment of lien indebtedness. However, no cases were cited which involved improvements. The Constitution adds an additional requirement for improvement liens in that they could attach "only when the work and material are contracted for in writing, with consent of both spouses." If there were no contract in writing signed by both spouses, then the subrogation reasoning of the *Eggemeyer* case would not seem to apply. The court in *Smith v. Smith,* 187 S.W.2d 116 (Tex.Civ.App.—Fort Worth 1945, no writ), in dealing with a charge against improved property, stated the following: "Such rule may not apply if the improved property is a homestead, but that issue is not involved here."

The case of *Barber v. Barber,* 223 S.W. 866 (Tex.Civ.App.—Fort Worth 1920, writ dism'd), specifically holds that an equitable lien will not be allowed to secure the payments for improvements where the property is homestead. The case of *McCanless v. Devenport,* 40 S.W.2d 903 (Tex.Civ.App.—Dallas 1931, no writ), held that such a lien would not attach for improvements unless they were contracted for in writing in the manner prescribed by the Constitution. If

---

6. "[S]eparate property is not entitled to absorb the community, nor any part of it, by way of expenditures for improvements. To permit this would be to permit the conversion of the community into the separate property of either spouse, as might best subserve the purposes of the husband and wife, and in the end have the effect of depriving creditors and heirs of what they would be justly entitled to receive. It frequently happens that the improvements cannot, because of their nature and the nature of the property improved, be segregated and classed as community, but become a part and parcel of the thing improved, such as buildings on separately owned land.

. . . .

The right of reimbursement is the right to be reimbursed from the separate estate of the spouse whose estate was benefited, and it is not the right, and in fact it is improper, to be reimbursed from the benefited spouse's interest in the community estate. The right of reimbursement is a claim in the nature of a charge on the property so improved. The right does not mature until dissolution of the community.

The right of reimbursement is not a debt enforceable as such, but is an equitable right enforceable only in a partition or dissolution of the community, and is not deemed to be a right, title, or interest in the land as such.

. . . .

After the court has ascertained that a right of reimbursement exists, a lien on the property may be given as an equitable method to secure the right of reimbursement."
O. Speers and L. Simpkins, Texas Family Law § 22:38 (5th ed. 1981).

the money was borrowed for the improvement and a proper lien was placed on the homestead, then the community, by paying back the borrowed money, could be subrogated to the rights of the lienholder.

■ While a homestead claimant is generally required to plead the existence of the homestead right, because Mrs. Smith's pleadings did not put Mr. Smith on notice that she was claiming reimbursement, such a requirement should not apply in this case. Also, Mr. Smith was not required to raise the homestead issue in his motion for new trial. Tex.R.Civ.P. 324. However, when Mrs. Smith presented evidence on improvements and enhancement value, Mr. Smith had the burden to establish the fact of homestead to use this claim as a defense. *Savell v. Flint*, 347 S.W.2d 24 (Tex.Civ. App.—Eastland 1961, writ ref'd n.r.e.). To sustain a claim of homestead, there must be proof of concurrence of usage and intent on the part of the owner to claim the land as homestead. *Braden Steel Corp. v. McClure*, 603 S.W.2d 288 (Tex.Civ.App.— Amarillo 1980, no writ).

■ The case of *Wierzchula v. Wierzchula*, 623 S.W.2d 730 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ), held that the homestead character of property is not destroyed by divorce if one of the parties continues to maintain it as a homestead. However, absent proof of its existence, a homestead cannot be presumed to continue after divorce. *Burk Royalty Company v. Riley*, 475 S.W.2d 566 (Tex.1972).

■ The word *homestead* was not mentioned throughout the testimony of the case. There was testimony about an undivided interest in 232.74 acres which was used in the cattle business. A claim of homestead is sustainable even if it entails only an undivided interest in the property. *Johnson v. Echols*, 21 S.W.2d 382 (Tex.Civ. App.—Eastland 1929, writ ref'd). Where land is held in a cotenancy, each cotenant is entitled to carve from the entire tract a parcel that does not exceed the prescribed acreage for his individual homestead. *Brown v. McLennan*, 60 Tex. 43 (1883).

The homestead may extend to tracts in addition to that on which the residence is situated, and the tracts may be detached from each other, provided that one tract is used as a place of residence and the other tracts are used for the purpose of supporting the family. *Vaden v. Collier*, 253 S.W. 889 (Tex.Civ.App.—Fort Worth 1923, no writ).

The only evidence concerning residence was a mention in the record of a mobile home. The record was not clear as to where the mobile home was located. The following colloquy occurred at the trial:

THE COURT: ....

Let me ask Mrs. Smith, is anybody living in the mobile home at this time?

MRS. SMITH: I think they stay there once in a while.

MR. SMITH: I live there.

THE COURT: Oh, you're staying in it? All right.

At the closing of the trial, Mr. Smith testifies as follows:

Q. You heard your wife testify while ago (sic) that the mobile home in which you are living is free and clear?

A. Yes, ma'am.

Q. If the court felt that your wife needed that piece of property to help her get started again, would you be willing for her to have it? Even if you had to relocate or whatever?

A. Yes, ma'am.

The court awarded Mrs. Smith the mobile home and required that she move it by March 15th.

This evidence establishes that there was a mobile home, but it does not establish the location of the mobile home. It does establish that there is a controversy as to whether or not anyone was residing there on a regular basis at the time of the trial, and certainly that cannot be considered the residence of Mr. Smith after the divorce, because it was awarded to Mrs. Smith.

■ In absence of proof of homestead, we overrule Mr. Smith's contention that the

equitable lien could not attach to the property on the basis of it being homestead.[7]

Mr. Smith further cites *Jensen v. Jensen, supra,* as prohibiting liens on separate property. The court in the *Jensen* case used the following language:

> However, *if the right to reimbursement is proved,* a lien shall not attach to Mr. Jensen's separate property shares. Rather, a money judgment may be awarded. (Emphasis added.)

The above statement from the opinion in *Jensen* should be considered in the context of the property being divided: stock in a closely held corporation. We agree with the following recent analysis of the above statement from *Jensen:*

> The court apparently relied upon *Burton v. Bell* [380 S.W.2d 561 (Tex.1964)] as authority to deny attachment of the lien. However, *Burton* does not address the issue whether a lien can attach to secure a charge for reimbursement. Rather, *Burton* provides authority for a previous sentence by the *Jensen* court that a charge for reimbursement is a claim for money, and not a right, title, or interest in the land.

Tighe, *A Chance to Clarify the Confusion Surrounding Reimbursement: Cook v. Cook,* 37 Baylor L.Rev. 255 (1985).

We construe this statement by the Supreme Court narrowly, distinguishing it from the instant situation which does not involve the "key man concept" which characterized the peculiar nature of the stock in *Jensen.* We do not believe the Supreme Court of Texas by their opinion in *Jensen*

intended to change the longstanding rule of permitting divorce courts to attach a lien to secure an award of reimbursement for improvements.[8] We see no reason for treating Mrs. Smith differently from any other person who could show an equitable interest in property and thus have an equitable lien.

■ Mr. Smith contends that the evidence in regard to enhanced value of the separate estate did not clearly establish any enhanced value. The right to reimbursement is an equity; a mathematical certainty in its determination is not required. *Logan v. Barge,* 568 S.W.2d 863 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.).

■ Mr. Smith further contends that Mrs. Smith, in seeking reimbursement for improvements, has the burden of proving that the benefits received by the separate estate from the use of the separate real property were greater than the benefits received by the community from such use. Mrs. Smith's response to this requirement is that the community paid the rent to the life tenant (Mr. Smith's mother) for the use and occupancy of the separate real property.[9] However, according to the undisputed testimony by Mr. Smith, he owned one-half of the land which was conveyed to him in 1977 by his father (now deceased).[10] Therefore, the rent to his mother was for the undivided interest which she held. There was no showing that the amount constituted the fair rental value of the entire property or that Mr. Smith was paying

---

**7.** Mr. Smith owned one-half interest in 232.74 acres, which would exceed the 100–acre limitation allowed for a rural homestead of a single person.

**8.** We note that the Texas Supreme Court found no reversible error in *Cook v. Cook,* 665 S.W.2d 161 (Tex.App.—Fort Worth 1983, writ ref'd n.r. e.), which was considered by the Supreme Court after *Jensen v. Jensen,* 665 S.W.2d 107 (Tex. 1984), was decided. The *Jensen* opinion is dated February 29, 1984, and the *Cook* decision was refused n.r.e. on June 27, 1984. The *Cook* case established an equitable lien on separate property for community improvements.

**9.** Mr. Smith's mother testified she was "in charge" of all of the property, but there is no evidence to show that she held a life estate in all the property. The deed of the one-half interest to Mr. Smith reserves a life estate of the mineral interest.

**10.** The rules of reimbursement for improvements applies regardless of the fact that the spouse who owns the property in question as his separate estate owns only a fractional part of the whole fee simple title. *McCanless v. Devenport,* 40 S.W.2d 903 (Tex.Civ.App.—Dallas 1931, no writ).

rent from the community to himself for his separate property interest.

 A careful study of the Texas cases reveals that the requirement of a balancing between benefits received by the community and benefits received by the separate property are required only when dealing with reimbursement for items such as interest, taxes and insurance. In the case of *Trevino v. Trevino*, 555 S.W.2d 792 (Tex. Civ.App.—Corpus Christi 1977, no writ), the court was dealing with a claim for reimbursement for improvements on a spouse's separate property. Appellant contended that the issue had been improperly submitted to the jury because it did not include the test of whether or not the community expenditures were greater than the benefits received from such expenditures. The court stated that this was the correct rule for determination of reimbursement where expenditures were for interest on prenuptial debts or taxes on separate property, but was not the test when dealing with improvements on the appellant's residence. Therefore, we find that the trial court properly applied the rule for reimbursement in the present case.[11]

 We agree with Mr. Smith's complaint concerning the court's order requiring him to sign a deed of trust to all the separate realty to which he had an interest to secure payments to Mrs. Smith. While we hold that the imposition of an equitable lien is proper, we do not believe that this authorizes the trial court to require a deed of trust lien to be placed on the property. Furthermore, an equitable lien is only appropriate when applied to the property on which the improvement is made. The evidence indicates that the improvements upon which enhancement was shown were on a specific tract of land, and a lien would not attach to other realty owned by Mr. Smith as his separate property.

11. *Anderson v. Gilliland*, 684 S.W.2d 673 (Tex. 1985), is an improvement case which did not require the party seeking reimbursement to

We reverse and remand the proceeding to the trial court for reformation of the judgment consistent with this opinion.

show benefits received and balance them against benefits given.