**In re Millege Billy NORTON, Jr., Debtor,**

**Bankruptcy No. 93–91419.**

United States Bankruptcy Court, ·
E.D. Texas,
Lufkin Division.

April 4, 1995.

Thomas Deaton, Flourney, Deaton & Stephens, Lufkin, TX, for Devra Deniece Norton (Creditor).

Stephen J. Zaylor, Chapter 7 Trustee, Lufkin, TX.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Now before the Court are: two Motions of Millege Billy Norton Jr. to Avoid Liens and the Motion of Devra Deniece Norton for Relief from the Automatic Stay. These Motions were combined for hearing and heard pursuant to regular setting. This opinion constitutes findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Millege Billy Norton, Jr. ("Debtor") was divorced from Devra Deniece Norton ("Creditor") in the District Court of Angelina County, ("the state court") Texas on October 29, 1993. The ensuing property division order is relevant to this case in two respects.[1] First, the state court awarded the Creditor a $3500.00 equitable lien against the separate property homestead of Debtor as compensation for community funds spent to improve the homestead.[2] Debtor was ordered to exe-

---

1. The divorce was contested and the subsequent property division order was judicially determined rather than through the agreement of the parties.

2. The testimony reveals that the net amount remaining on this obligation is $1500.00.

cute a vendor's lien note in favor of Creditor to secure this lien; Debtor failed to do so. Second, the state court awarded the Creditor an equitable lien in the amount of $14,000.00 against the cash surrender values of two of Debtor's life insurance policies.[3] It is undisputed that these policies were purchased with community funds during the marriage and are thus community assets. This equitable lien was awarded as compensation for separate property funds which Creditor had contributed to the community. The division order required Debtor to execute an assignment of joint ownership in the life insurance policies; Debtor failed to do so. He subsequently filed for relief under chapter 7 of the Code.

In his schedules, Debtor has claimed as exempt both the cash surrender value of his life insurance policies and his homestead. These exemptions are made pursuant to various provisions of the Texas Property Code which are not at issue in this case. Additionally, Debtor has filed two motions seeking to invalidate the equitable liens awarded by the state court against the insurance policies and his homestead. The basis for Debtor's motions is found in 11 U.S.C. § 522(f)(1) which provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled.... if such lien is ..... a judicial lien." Debtor argues that these liens are judicial liens, impair his exemptions, and as a consequence are avoidable. Creditor disagrees. In the case of the insurance policies Creditor argues that the decree of divorce extinguished the parties' joint tenancy in the policies and created a new interest in place of the old. Therefore, Creditor's equitable lien is not fixed on a preexisting interest of the Debtor but instead on the unitary interest in the policies which Debtor was awarded in the divorce decree. As for the

homestead, Creditor argues that to the extent her lien is compensation for community assets spent improving Debtor's separate property the lien should not be avoided. Creditor has also filed a Motion to Lift the Automatic Stay to foreclose her interest in these properties as awarded by the state court. The matter was taken under advisement.

## DISCUSSION

### Validity of Lien on Homestead

■ Resolution of this issue begins and ends with the Fifth Circuit's recent decision in *Matter of Parrish*, 7 F.3d 76 (1993). In *Parrish*, a husband, with a separate property homestead, and his wife spent several thousand dollars in community funds improving the homestead. The couple later divorced. The divorce decree awarded a judgment to wife in compensation for her interest in community funds spent on the husband's separate property homestead. The judgment was secured by an equitable lien against the home.[4] Husband later filed for relief under chapter 7 of the Code and attempted to avoid the lien under § 522(f)(1). In sustaining the decisions of the lower courts permitting the avoidance of the lien the court of appeals determined that wife's lien encumbered the husband's preexisting interest in his separate property homestead. In the case at bar the facts are indistinguishable; Debtor's Motion to avoid the lien encumbering his homestead is GRANTED.

### Lien on Insurance Policies

■ Recently, this Court addressed somewhat similar issues in *In re Buffington*, 167 B.R. 833 (Bankr.E.D.Tex.1994). In *Buffington*, the parties stipulated to the division of the marital homestead. Prior to the divorce decree the homestead was the community property of the marriage. The stipulation

---

3. State Farm Insurance Company policy no(s) 0724–9009 and 0654–7825. The cash surrender values of the two policies is $26,000.00.

4. "When dividing marital property on divorce, trial courts may impose equitable liens on one spouse's *separate real property* to secure the other spouse's right of reimbursement for community improvements to that property. citations omit-

ted. Although courts may impress equitable liens on separate real property to secure reimbursement rights, they may not impress such liens, absent any compensable reimbursement interest, simply to ensure a just and right division." *Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex. 1992).

awarded the home to the husband; the interest conveyed by the wife was secured by a real estate lien note and deed of trust in the amount of $5000.00. Subsequently, the husband filed for relief under chapter 7 and sought to avoid the wife's interest pursuant to § 522(f)(1).

In analyzing the issue the Court looked both to precedent from the Supreme Court and the Texas supreme court. The Supreme Court precedent was *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). In *Farrey,* the Supreme Court, in pertinent part, determined that § 522(f) was inapplicable unless the creditor's lien attached to a preexisting interest of the debtor in property. Following Wisconsin law the Supreme Court determined that divorce extinguished the previous interests held by the parties in the homestead. Since Sanderfoot's lien arose at the same time as Farrey's new fee simple interest in the homestead the lien was not avoidable. The Court next looked to Texas precedent.

In *McGoodwin v. McGoodwin,* 671 S.W.2d 880 (Tex.1984) James and Patsy were divorced. The parties agreed to a property settlement which awarded James the homestead subject to the payment of $22,500.00 in compensation for Patsy's homestead rights. James failed to pay and Patsy attempted foreclosure; James claimed his homestead was exempted from forced sale. The Texas supreme court held that a purchase money vendor's lien arose by implication to secure the interest conveyed. This Court recognized, however, that the Texas supreme court envisioned the mechanics of the transaction as if Patsy's vendor's lien encumbered the half interest which she had conveyed; not the whole. Therefore, unlike the situation in *Farrey* where the interests were extinguished upon divorce, the interests in *McGoodwin* were merely reordered. Finding the facts in *Buffington* similar to *McGoodwin,* the Court refused to avoid the wife's lien to the extent it secured her half interest in the former marital homestead.

The analysis is somewhat different in the case of the equitable lien encumbering the insurance policies. Debtor argues that the equitable lien is not compensation for previous rights enjoyed by Creditor in the insurance policies but rather is a lien securing reimbursement for Creditor's separate property funds which were expended by the community. The Court is not convinced that this distinction is relevant.

In Texas, the presumption is that all property acquired during a marriage is community property. Tex.Fam.Code Ann. § 5.02 (Vernon 1993). Each spouse owns an undivided half of this property. *In re Worth,* 100 B.R. 834, 840 (Bankr.N.D.Tex.1989). Upon a divorce, when the parties are unable to agree, a court may order a 'just and right' division of the community property. Tex. Fam.Code Ann. 3.63(a) (Vernon 1993). The effect of such a division is demonstrated by *In re Finch,* 130 B.R. 753 (S.D.Tex.1991). In *Finch,* Douglas and Jackie acquired two parcels of real property during their marriage; they subsequently divorced. The property division portion of the divorce was contested. Eventually, the state court ordered that Douglas was to receive the properties. The court also awarded Jackie a $70,000.00 judgment against Douglas as part of a 'just and right' division of the community estate. This judgment was secured by an equitable lien in like amount granted against the two properties. Douglas eventually filed bankruptcy and attempted to avoid the equitable liens pursuant to § 522(f). The district court affirmed the bankruptcy court's decision denying Douglas' motion.

The district court determined that the effect of *Farrey v. Sanderfoot* under Texas law was the same. After citing and discussing a long list of Texas cases dealing with the issue of property division in divorce cases the court reasoned:

For a court to have the power to divide community property, it must have the power to divest the parties of their preexisting interests in that property. If a trial court can divest the nonacquiring spouse of all interest in a parcel of community property, so too can it divest the acquiring spouse of his or her preexisting community interest and revest the acquiring spouse with fee simple title. After such a division, the interest of both ex-spouses' in that property are characterized anew.

*Finch,* 130 B.R. at 757. The court concluded, as in *Farrey,* that Douglas' pre-dissolution community interest in the property was extinguished by the entry of the divorce decree. The resulting equitable lien in Jackie thus arose contemporaneously with Douglas' new fee simple interest in the property and was unavoidable pursuant to § 522(f) of the Code.[5] *Id.*

The Court finds the reasoning of *Finch* to be applicable to this case. As previously stated, the divorce decree governing the property division between Debtor and Creditor was judicially mandated. The state court, in order to achieve a 'just and right' division of the marital estate, divested both parties of any community interest in numerous classes of community property which were then assigned to either of the parties as his or her sole and separate property. The subject life insurance policies were community assets of the estate. The decree extinguished the parties' community interest in the policies and awarded both to Debtor as his sole and separate property subject to the equitable lien in favor of Creditor.[6] Since both the Creditor's equitable lien and Debtor's sole and separate property interest in the policies arose at the same time Debtor's motion to avoid Creditor's equitable lien pursuant to § 522(f) must be DENIED.

■  The final motion pending before the Court is the Motion of Creditor for Relief From the Automatic Stay. This motion seeks to lift the stay to permit Creditor to foreclose her equitable liens against Debtor's homestead and life insurance policies. Due to the Court's previous finding that the equitable lien encumbering the homestead is avoided Creditor's present motion must be DENIED IN PART. However, the Court finds that Creditor has a valid equitable lien encumbering Debtor's life insurance policies, that the policies are no longer property of the estate, and that Debtor has not made adequate provisions to repay the indebtedness underlying this lien. For this reason, and on this issue, the motion is GRANTED IN PART.

The preexisting rights of the parties was not reordered or augmented but extinguished.

---

5. This Court's *Buffington* decision is distinguishable from *Finch* in one important respect. In *Buffington,* the division of the property was done through agreement among the parties. The conveyance of the wife's community interest in the homestead was in the nature of a purchase money sale. Therefore, the husband's resulting unitary interest in the homestead was subject to wife's lienhold interest in the community interest which she conveyed. Furthermore since the division of the parties' community estate was agreed husband's community interest in the property was never extinguished by judicial action; therefore, wife's lien was held to be valid only against the one-half interest she had conveyed and not the whole of the homestead. In *Finch,* the equitable lien was not consensual but resulted from a court-ordered property division.

6. Debtor's emphasis that the lien is the result of the reimbursement to Creditor for separate funds spent on the community is irrelevant. The state court obviously found that Creditor was entitled to reimbursement from the community for these separate property funds. The state court could have ordered the community property life insurance policies surrendered to cash value to meet this obligation as part of a 'just and right' division of assets. Instead, the state court concluded that a 'just and right' division of assets "having due regard for the rights of each party," required awarding Debtor the policies subject to Creditor's lien. Tex.Fam. Code 3.63(a) (Vernon 1993).