**In re Bruce R. LEVI, Debtor.**

**Bankruptcy No. 394–35777–HCA–7.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

June 5, 1995.

---

**470**

Robert D. White, Creel & Atwood, P.C., Dallas, TX, for debtor.

Anthony A. Petrocchi, Weil & Petrocchi, P.C., Dallas, TX, for Nancy Lee Hoffmann.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING MOTION TO AVOID LIEN IMPAIRING DEBTOR'S EXEMPTION

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came on for hearing on the 3rd of May, 1995, the Motion to Avoid Lien Impairing Debtor's Exemption. Counsel for Debtor Bruce R. Levi and for Nancy Lee Hoffmann presented the matters herein. The Court heard evidence and argument of counsel, and makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Levi and Hoffmann were married in October, 1988, and were later divorced. Their Modified Final Decree of Divorce ("Divorce Decree") was signed June 29, 1994.

2. The Divorce Decree granted to Hoffmann against Levi a judgment for $152,-290.80, plus interest, secured by an equitable lien on the following property:

a) Fidelity Investments Individual Retirement Accounts ("IRA accounts");

b) Levi's interest in Lane Gorman Trubitt Partnership;

c) Life Insurance policies on Levi's life;

d) Levi's Lane Gorman Trubitt 401k Account; and

e) Levi's Lane Gorman Trubitt Retirement Trust Account.

3. On September 30, 1994, Levi filed his petition for relief under Chapter 7 of the Bankruptcy Code. On his Schedule C, Levi claimed the IRA accounts, life insurance policies, and the 401k account as exempt property. No party has disputed that those items are exempt.

4. Levi later filed the instant motion to avoid Hoffmann's equitable lien pursuant to 11 U.S.C. § 522(f)(1)(A), as a judicial lien which impairs his exemptions. In his motion, Levi seeks to avoid the lien on all property to which the lien attached, as listed in Finding 2 above. Levi was the only witness to testify at the hearing. Following is a discussion of the pertinent facts elicited at

the hearing as to each item covered by the lien.

5. Two of the five items covered by the lien are not claimed as exempt: the partnership interest and the retirement trust account.

6. The IRA accounts were established by Levi in 1985, before he and Hoffmann were married. The value of the accounts was $8,902.39 before Levi and Hoffmann were married. The only contribution made to the IRA accounts during the marriage was a $2,000.00 contribution made on January 5, 1989. The accounts continued to draw interest throughout the marriage, and were worth $22,749.38 on the date of divorce. No monies were ever withdrawn.

7. The life insurance policies on Levi's life are term policies with no cash surrender value. The beneficiaries under the policies are Levi's children from a previous marriage.

8. The 401k account was established prior to the Levi's marriage to Hoffmann. No contributions, however, were made to the account until after their marriage in 1988. The account had a value of $14,174.00 at the time of the divorce.[1]

### CONCLUSIONS OF LAW

9. Section 522(f)(1)(A) of the Bankruptcy Code provides that, subject to certain exceptions, the "debtor may avoid the fixing of lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is a judicial lien."

10. The partnership interest and the retirement trust account are not claimed as exempt, and there was no indication that Levi would be entitled to an exemption for them under § 522(b). Accordingly, because no exemption is impaired as to those items, Levi cannot avoid the lien on them.

11. There appears to be no dispute that the IRA accounts, life insurance policies, and 401k account are exempt. The question to be decided by this Court is whether Levi can avoid the lien on them.

12. Hoffmann first argues that the lien granted in the Divorce Decree was not a judicial lien, but an equitable lien which is not avoidable under § 522(f). She asserts that, under state law, a judgment lien is distinguishable from an equitable lien, and that this distinction is determinative of whether the lien is a judicial lien. This analysis, however, is inapplicable to the determination of whether the lien in question is a "judicial lien." That determination must be made pursuant to federal law, irrespective of the label state law puts on a lien. *See In re Yerrington,* 144 B.R. 96, 98 (9th Cir. BAP 1992) *aff'd without opinion* 19 F.3d 32 (9th Cir.1994). The Bankruptcy Code defines "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The United States Bankruptcy Court for the Western District of Texas determined that a lien granted to a spouse in a Texas divorce proceeding was a judicial lien under the Bankruptcy Code definition. *See In re Parrish,* 144 B.R. 349, 353 (Bankr. W.D.Tex.) *aff'd and remanded* 161 B.R. 785 (W.D.Tex.1992) (definition of judicial lien not addressed), *aff'd* 7 F.3d 76 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1373, 128 L.Ed.2d 49 (1994). Other bankruptcy courts have come to the same conclusion regarding liens granted in divorce proceedings. *See In re Haynes,* 157 B.R. 646, 648 (Bankr.S.D.Ind. 1992) ("key is not the name of the document creating the lien, but whether the lien arose ... by a nonconsensual legal or equitable process" as opposed to agreement); *Yerrington,* 144 B.R. at 98–99 ("equitable ownership interest" was a judicial lien because granted by divorce court to secure payment of a property settlement obligation); *In re Wells,* 139 B.R. 255, 256 (Bankr.D.N.M.1992).[2] The equitable lien in the present case was ob-

---

1. The Divorce Decree found that 60% of the 401k account was $8,504.40. Because 60% of $14,-174.00 is $8,504.40, the value of the 401k on the date of divorce was $14,174.00.

2. The Supreme Court in the *Farrey* decision, discussed later, expressly did not rule on whether the lien in that case was a judicial lien, as defined by the Bankruptcy Code. *See Farrey v. Sanderfoot,* 500 U.S. 291, 295, 111 S.Ct. 1825, 1828, 114 L.Ed.2d 337 (1991).

tained through the divorce proceedings. Those proceedings were legal or equitable under any definition of those terms. As such, the lien in question is a judicial lien under the Bankruptcy Code definition.

13. Generally, judicial liens can be avoided by a debtor as a matter of course. The matter becomes more difficult when the lien is established in a community property divorce proceeding. The Supreme Court examined § 522(f)(1)(A) in that context in *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). Of major importance in the decision was meaning of the term "fixing" in § 522(f). The Supreme Court determined that, because "fixing" refers to a temporal event, "unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1)." *Id.* at 296, 111 S.Ct. at 1829 (emphasis original). "Whether the debtor possessed the interest to which the lien fixed, before it fixed, is a question of state law." *Id.* at 299, 111 S.Ct. at 1830.

14. Since the *Farrey* decision, Courts have applied § 522(f) to equitable liens created in a divorce proceeding under Texas law. In Texas, the divorce divests each spouse of his or her interest in community property and revests fee simple title in one spouse or the other. *See In re Finch*, 130 B.R. 753, 756 (S.D.Tex.1991). An equitable lien on property which was previously community property, therefore, fixes at the same time the acquiring spouse's interest in the property is created. *Id.* A debtor cannot avoid those liens under § 522(f)(1)(A).

15. Equitable liens on property which was separate property during the marriage are treated differently. The divorce does not create a new property interest with respect to separate property; that property continues unaltered after the divorce. *Matter of Parrish*, 7 F.3d 76, 78 (5th Cir.1993). Consequently, equitable liens are fixed to separate property after the property interest is created and are therefore avoidable under § 522. *Id.*

16. To determine whether each item of property was separate property or community before Levi and Hoffmann were divorced, the Court must examine each item of property to which the Divorce Decree granted an equitable lien. The determination of the character of each item of property must be made pursuant to Texas law. Once a determination is made of the character of property before divorce, either as community property or separate property, the Court can determine whether Levi can avoid the lien on each item of property.

17. *The IRA Accounts.* When determining what portions of IRA accounts are separate and what portions are community property, Texas courts have used an analogy of the IRA to a bank account. *See Hopf v. Hopf,* 841 S.W.2d 898, 901 (Tex.App.—Houston [14th Dist.] 1992, no writ). Under that analysis, any separate property funds in the account remain separate property, and community funds deposited to the account are community property. *See Welder v. Welder,* 794 S.W.2d 420, 425 (Tex.App.—Corpus Christi 1990, no writ). Another valid analogy is to a defined-contribution retirement plan. Any contributions made, or interest earned, before marriage constitute separate property; any contributions made, or interest earned, after the date of marriage constitute community property. *See Iglinsky v. Iglinsky,* 735 S.W.2d 536, 538–39 (Tex. App.—Tyler 1987, no writ). This division is most likely based on the long-standing law in Texas that interest or income on either separate or community property is community property. *See, e.g., Commissioner v. Chase Manhattan Bank,* 259 F.2d 231, 239 (5th Cir.1958), *cert. denied* 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575 (1959). Whether the Court considers the bank account standard or the defined-contribution retirement plan standard, the result is the same: the balance of the IRA accounts on the date of marriage is separate property, and any increase in the balance of the accounts during marriage, whether from contributions or any interest accrued, is community property.

18. Applying this standard to the facts of this case, Levi deposited $8,902.39 before he and Hoffmann were married. This

amount was his separate property. On the date of the divorce, the accounts had a balance of $22,749.38. The increase from the $8,902.39 deposited before marriage and the $22,749.38, which equals $13,846.99, is attributable to the $2,000.00 deposit of community property and interest on both separate and community property. Consequently, on the date of the divorce, $13,846.99 of the funds in the IRA accounts was community property. Therefore, under the standards set forth in *Farrey, Finch,* and *Parrish,* Levi may avoid the lien on the IRA accounts except as to the $13,846.99 which was community property before the divorce.

■■■■ 19. *Life Insurance Policies.* The only information before the Court regarding the insurance policies is that they are term policies on Levi's life, with no cash value, and that the beneficiaries of the policies are Levi's children. The rule in Texas is that property held by either spouse on the date of divorce is presumptively community property. Only by clear and convincing evidence can a spouse overcome that presumption. TEX.FAM.CODE ANN. § 5.02 (Vernon 1993). The fact that insurance policies are term policies with no cash value does not change their character as community or separate property. *See Seaman v. Seaman,* 756 S.W.2d 56, 58 (Tex.App.—Texarkana 1988, no writ). In the present case, because there was no evidence that the insurance policies covered by the lien were separate property before the divorce, the policies in effect on the date of the divorce were presumptively community property. Levi may not avoid the lien on those insurance policies.[3] *See Farrey,* 500 U.S. 291, 111 S.Ct. 1825; *Finch,* 130 B.R. 753.

■■■■ 20. *401k Account.* For defined-contribution retirement plans, the amount in the account at the time of marriage is the separate property of the contributing spouse. *See Iglinsky,* 735 S.W.2d at 538–39. All contributions made after marriage and all interest earned on the account after marriage are community property. *Id.* On the date of marriage Levi had not yet contributed to his 401k account. The Divorce Court determined that, on the date of divorce, the account balance was $14,174.00. This Court will not disturb that finding. The $14,174.00 was therefore community property, and Levi cannot avoid the lien on this amount of his 401k account. *See Farrey,* 500 U.S. 291, 111 S.Ct. 1825; *Finch,* 130 B.R. 753. Any amounts above $14,174.00 are post-divorce earnings, however, and not community property.

### CONCLUSION

Hoffmann's lien against Levi's property will be avoided to the extent it covers Levi's separate property portions of his IRA accounts and 401k account. However, Hoffmann will retain her lien on the portion of those accounts which were community property before the divorce. Hoffmann will also retain her lien on the life insurance policies, retirement trust account and partnership interest, as contemplated by the Divorce Decree. An order consistent with these findings and conclusions will be entered forthwith.

### ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AVOID LIEN IMPAIRING DEBTOR'S EXEMPTION

Came on for hearing on the 3rd day of May, 1995, the Motion to Avoid Lien Impairing Debtor's Exemption ("Motion"). Pursuant to this Court's Findings of Fact and Conclusions of Law Regarding Motion to Avoid Lien Impairing Debtor's Exemption signed on the June 2, 1995, it is

ORDERED that the Motion is DENIED as to the following property:

1. Life insurance policies on the life of Bruce Levi in place on June 29, 1994;

2. Bruce Levi's interest in the Lane Gorman Trubitt Partnership;

3. Bruce Levi's Lane Gorman Trubitt Retirement Trust Account;

4. $14,174.00 of Bruce Levi's Lane Gorman Trubitt 401k account; and

whether any policies Levi now has are the same policies referred to in the Divorce Decree.

---

**3.** The Court makes no determination regarding the avoidance of liens on any life insurance policies not in effect at the time of the divorce, or

5. $13,846.99 of Bruce Levi's Individual Retirement Accounts (Magellan Fund 0232691568 and Equity Income Fund 0232691576).

It is further

ORDERED that the Motion is GRANTED and the equitable lien of Nancy Lee Hoffmann is avoided as to the following property

1. Amounts above $14,174.00 in Bruce Levi's Lane Gorman Trubitt 401k account; and

2. Amounts above $13,846.99 of Bruce Levi's Individual Retirement Accounts (Magellan Fund 0232691568 and Equity Income Fund 0232691576).